FERNANDO SIERRA BERDECÍA, COMISIONADO DEL TRABAJO, ETC., querellantes y apelados, *v.* LEOVIGILDO V. QUILICHINI, querellado y apelante.

Núm. 10338.—*Sometido:* Diciembre 1, 1950. *Resuelto:* Junio 13, 1951.

*Brown, Newsom & Córdova,* abogados del apelante; *Ramón Cancio,* abogado del Departamento del Trabajo y a su vez de los apelados.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El Comisionado del Trabajo de Puerto Rico, en representación y para beneficio de ciertos empleados del querellado Leovigildo V. Quilichini, instó el presente pleito reclamando la parte del salario que cada uno de dichos empleados—chóferes—dejó de percibir durante el período en que trabajaron para el querellado en la construcción de una carretera entre Aguada y Aguadilla. Este era un proyecto del Departamento del Interior de Puerto Rico, al cual el Gobierno Federal aportaba una parte de los fondos.(1) El querellado pagó el salario de dichos chóferes al tipo de 45¢ la hora y de 90¢ la hora por las horas en exceso de ocho al día. No hubo ante la corte inferior ni hay ante ésta, controversia en cuanto a que la obra que se llevó a cabo era de construcción y que el Decreto Mandatorio núm. 11 de la Junta de Salario Mínimo de Puerto Rico, en vigor desde el primero de julio de 1946 y enmendado con efecto al primero de noviembre del mismo año, era el aplicable.(2)

El querellante reclamó la diferencia entre el salario de 45¢ por hora pagado por el querellado a sus empleados por

(1) Aun cuando este último extremo no fué incluído en la estipulación de hechos radicada por las partes en el tribunal inferior con fecha 25 de abril de 1950—en virtud de la cual se sometió la única cuestión que quedó en controversia "de si el querellado debió haberles pagado [a los querellantes] a razón de 45¢ por hora [90¢ el tipo doble] o si debió haberles pagado, como alega el querellante, a razón de 60¢ por hora [$1.20 el tipo doble]"—el Comisionado en su alegato ante este Tribunal admite "por ser cierto" que en el referido proyecto se utilizaron fondos insulares y federales.

(2) En su contestación el querellado alegó, entre otras cosas, que había pagado a los chóferes reclamantes "toda la compensación que requieren la Ley y los Decretos Mandatorios de la Junta de Salario Mínimo de Puerto Rico", así como que "tal compensación es 45 centavos por hora y no 60 centavos por hora, como se reclama". Asimismo alegó haberse negado a pagar la compensación reclamada "porque la Ley y los Decretos Mandatorios de la Junta de Salario Mínimo no requieren el pago de tal compensación."

En su alegato ante este Tribunal hace constar que "La obra era una obra de construcción y el referido Decreto Mandatorio núm. 11 era aplicable."

el tiempo que cada uno de éstos trabajó en el referido proyecto, y el de 60¢ la hora fijado para los empleados incluídos en el Grupo D del artículo 2 del referido Decreto Mandatorio núm. 11, que, además de los expresamente mencionados, comprende también "cualquier otro empleado diestro no comprendido en los demás grupos".

El tribunal inferior resolvió que el salario de un chófer trabajando en la industria de construcción era de 60¢ la hora conforme al apartado D del referido decreto, y condenó al querellado a pagar a sus empleados—chóferes—la diferencia dejada de pagar, más una suma igual como penalidad bajo las disposiciones del artículo 25 de la Ley de Salario Mínimo. El único señalamiento de error en apelación va dirigido a impugnar tal conclusión del tribunal inferior.

El Comisionado del Trabajo sostiene que los chóferes son empleados *diestros* que caen bajo el Grupo D del artículo 2 del Decreto Mandatorio núm. 11 y que tienen por lo tanto derecho a percibir un salario mínimo de 60¢ por hora de trabajo normal. El querellado sostiene que caen bajo el Grupo E como empleados *semidiestros*, y que, en consecuencia, sólo tienen derecho a percibir el salario mínimo de 45¢ por hora, que les fué pagado totalmente.

El artículo 2 del referido Decreto Mandatorio núm. 11 fija distintos tipos de salario mínimo por hora de labor, clasificando las ocupaciones de la industria de construcción en seis grupos.(³) Como puede verse, los chóferes no están ex-

---

(³) Dicho artículo provee: "Artículo 2.—Salario Mínimo—El patrono deberá pagarle a cada uno de sus empleados un salario no menor del tipo por hora que para la ocupación desempeñada por el empleado se fija en la siguiente escala:

| Ocupaciones | Típico Mínimo Por Hora |
|---|---|
| Grupo A: Operador de maquinaria pesada como pala de empuje (*bulldozer*), niveladora (*grader*), cargador-conductor (*l o a d e r-conveyor*, sea *Barber-Greene* o de cualquier otra marca), draga (*drag-line*), pala mecánica o cualquiera otra maquinaria pesada............ | $1.10 |

presamente incluídos en ninguno de los grupos en él contenidos. No apareciendo específicamente incluídos, es menester determinar en qué categoría fué la intención de la Junta de Salario Mínimo situarlos, si en la de diestros—Grupo D—o en la de semidiestros—Grupo E. Salta a la vista inmediatamente, al examinar un grupo y otro, que la clasificación de los chóferes como empleados diestros, incluyéndolos dentro de la misma clasificación a que pertenecen, pero sin quedar limitado a, los obreros de artes y oficio—Grupo D—coincide con el concepto de trabajador diestro[4] que la propia Junta de

| | | |
|---|---|---|
| Grupo B: | Maestro de obra, arte u oficio, con funciones de supervisión en trabajos de carpintería, ebanistería, electricidad, mecánica, plomería, pintura, o en cualquiera otra arte u oficio.. | $0.90 |
| Grupo C: | Empleado en ocupación especial como la de albañil de terminación, oficial electricista, oficial plomero, empapelador, carpintero de terminación, marmolista, enyesador, remachador, cortador o soldador con acetileno, o capataz.................................. | $0.75 |
| Grupo D: | Ajustador de maquinaria, albañil, aparejador, barrenero a máquina, calcador, carpintero, capataz de brigada, eslingador, dinamitero, herrero, hojalatero, plomero, malacatero (winchero), mecánico, nivelador, operador de rolo, pintor, reforzador, señero, soldador, operario de acero estructural, o cualquier otro empleado diestro no comprendido en los demás grupos ........................... | $0.60 |
| Grupo E: | Albañil auxiliar, amarrador o cortador de varillas, barrenero a mano, carpintero auxiliar, conserje-mensajero, engrasador de maquinaria, hojalatero auxiliar, ligador, listero, marronero, mecánico auxiliar, oficinista, operador de maquinaria liviana, portacintas, portamira, telefonista, o cualquier otro empleado semidiestro no comprendido en los demás grupos ........................... | $0.45 |
| Grupo F: | Empleado o trabajador no diestro............ | $0.32" |

(4) El artículo 1(C) del Decreto Mandatorio núm. 12 enmendado dice así:

"*Trabajador diestro* se considerará todo obrero que tenga un pleno conocimiento, comprensión y dominio de la técnica manual y de los procesos envueltos en el desempeño de cualquiera de las ocupaciones gene-

Salario Mínimo incluyó en el Decreto Mandatorio núm. 12 enmendado, aplicable al servicio de transporte, en contraposición al concepto de trabajador semidiestro ([5]) allí mismo expresado.

En líneas generales, la definición de trabajador diestro del Decreto Mandatorio núm. 12 corresponde a la clasificación del Grupo D del artículo 2 del Decreto Mandatorio núm. 11, mientras que la definición de trabajador semidiestro concuerda con la clasificación hecha en el Grupo E de este último. En la definición de trabajador diestro a que hace referencia el Decreto Mandatorio núm. 12 se incluyen "las ocupaciones generalmente reconocidas como oficio" enumerándose los trabajadores de artes y oficio que están expresamente incluídos en el Grupo D del Decreto Mandatorio núm. 11. De igual manera, en la definición de trabajador semidiestro del Decreto Mandatorio núm. 12 enmendado, se incluyen, "los auxiliares de los oficios enumerados en la definición de trabajador diestro", que son los mismos incluídos en el Grupo E del Decreto Mandatorio núm. 11.

Es de notarse también que al fijar la Junta de Salario Mínimo la escala de salarios en el artículo 2(b) del Decreto Mandatorio núm. 12 enmendado, establece una escala para

ralmente reconocidas como oficios, tales como, sin que se entienda que están limitados a los siguientes: mecánicos, electricistas, carpinteros, talabarteros, herreros, pintores, hojalateros, soldadores, plomeros, torneros y ebanistas. Debe tener habilidad para desempeñar las labores que se le asignen dentro de su oficio, con criterio independiente y sin necesidad de que se le instruya en detalle cómo debe hacer el trabajo, bastando con indicarle la clase de trabajo que se desea realizar. Debe haber adquirido experiencia previa en las labores que desempeñe."

([5]) El artículo 1(D) del Decreto Mandatorio núm. 12 enmendado dice así:

"*Trabajador semidiestro* se considerará todo obrero que, sin tener el grado de conocimiento, comprensión y dominio de la técnica manual y de los procesos que se requieren del trabajador diestro para el desempeño de su oficio, posee sin embargo aquellos conocimientos que le permitan ejecutar bajo supervisión ciertos trabajos dentro de su oficio. Estarán comprendidos en esta categoría, sin que se entienda como limitación, los auxiliares de los oficios enumerados en la definición de trabajador diestro, los engrasadores y los montadores de gomas (gomeros)."

los trabajadores diestros, de entre los cuales excluyó expresamente a los chóferes, incluyéndolos en una categoría distinta, sin que al fijar la escala para los trabajadores semidiestros hiciera exclusión de los chóferes. Es inevitable la conclusión de que la Junta, en el Decreto Mandatorio núm. 12 al excluir a los chóferes de la categoría de trabajadores diestros y establecer una categoría distinta para ellos, sin que lo hiciera así con los trabajadores semidiestros, marcadamente expresó el concepto de trabajadores diestros para los chóferes en el servicio de transporte. Como el Decreto Mandatorio núm. 11 expresamente no dispuso nada específicamente respecto a los chóferes empleados en la industria de la construcción, para determinar la intención de la Junta de Salario Mínimo al promulgar el Decreto Mandatorio núm. 11, en cuanto a la categoría en que quiso situarlos, es de utilidad el concepto que a los chóferes en otras actividades dió la misma. A tales fines hemos examinado el Decreto Mandatorio núm. 12 enmendado. Por otro lado, consideradas las actividades incluídas en el Grupo E del Decreto Mandatorio núm. 11 al definir los trabajadores semidiestros, es fácil llegar a la conclusión de que no fué la intención de la Junta incluir a los chóferes como semidiestros y sí como diestros.

■ Pasamos ahora a examinar otro argumento que en su alegato sugiere, más bien que plantea, el apelante y que, a nuestro juicio, además de no afectar el resultado a que llegó el tribunal inferior, parece inconsistente con la posición por él asumida ante el mismo. Ya hemos visto, nota 2, supra, que su contención ante dicho tribunal fué que había pagado a los obreros reclamantes "toda la compensación que requieren la Ley y los Decretos Mandatorios de la Junta de Salario Mínimo de Puerto Rico", sosteniendo que tal compensación "es 45 centavos por hora y no 60 centavos por hora". Arguye ahora, sin embargo, que ciertas disposiciones conocidas como "Special Provisions for Projects Financed

with Federal Aid-Funds available to the Island of Puerto Rico", ([6]) de procedencia federal, clasifican a los chóferes de camiones de más de 1½ toneladas como empleados semidiestros y que, formando parte dichas disposiciones de todos los contratos para la construcción de carreteras en Puerto Rico en que se usen fondos federales—incluyendo el del presente caso—tal clasificación es la que debe regir y aplicarse a los obreros reclamantes.

Examinadas las disposiciones de referencia, encontramos que el salario mínimo en ellas fijado para los empleados semidiestros es de 40¢ por hora y no el de 45¢ que el querellado de hecho pagó bajo su interpretación del Decreto Mandatorio núm. 11 de la Junta de Salario Mínimo de Puerto Rico. No fué entonces su contención que no venía obligado a pagar el salario mínimo fijado por dicho Decreto, ni que había pagado de más a sus empleados. En su propio alegato ante este Tribunal admite que el Decreto Mandatorio núm. 11 es aplicable.

De acuerdo con las "Condiciones Generales para la Contratación de Obras Públicas Insulares", aprobadas en el año 1946 por el Comisionado del Interior de Puerto Rico—que derogaron las aprobadas en el año 1902, según enmendadas en el año 1931—y las cuales también son aplicables a, y forman parte de, todos los contratos para la construcción de obras públicas en Puerto Rico, incluyendo el del presente caso, los contratistas de tales obras vienen obligados a pagar "no menos del salario mínimo estipulado por el Decreto Mandatorio núm. 11 de la Junta de Salario Mínimo, promulgado de acuerdo con la Ley núm. 8, aprobada el 5 de abril de 1941, o como se enmendó posteriormente." Es evidente, pues, que las disposiciones especiales de procedencia federal

---

([6]) Estas disposiciones han sido compiladas por el Comisionado del Interior de Puerto Rico y forman parte, al igual que las "Condiciones Generales para la Contratación de Obras Públicas Insulares" de 1946, de los contratos para la ejecución de obras a realizarse conjuntamente con fondos insulares y federales.

no juegan papel en el caso de autos, pues el querellado venía obligado a pagar a sus empleados los salarios fijados por el referido Decreto Mandatorio núm. 11.([7])

*En vista de la conclusión a que hemos llegado en cuanto al alcance de dicho Decreto, procede la confirmación de la sentencia.*

([7]) Es innecesario, por lo tanto, entrar a considerar en este caso si entre el Decreto Mandatorio núm. 11 de la Junta de Salario Mínimo de Puerto Rico, según lo hemos interpretado, y la reglamentación de referencia, existe o no conflicto que impida que subsista el salario mínimo provisto por dicho Decreto. No obstante esto, véanse *Ávila* v. *Tribl. de Distrito,* 68 D.P.R. 11 y *Fajardo* v. *Tribunal de Distrito,* 69 D.P.R. 476.